UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| FRANCIS CAHILL, | )   1:22-cr-00003-LEW |
| | ) |
| Defendant | ) |

**ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

On October 3, 2022, I sentenced Mr. Cahill to a term of 72 months imprisonment following his guilty plea to a charge of felon in possession of a firearm. Last April, I reduced Mr. Cahill's sentence to 65 months following a Joint Agreement for Sentencing Reduction (ECF No. 71) to reflect a retroactively applied amendment to the sentencing guidelines. On August 13, 2024, Mr. Cahill filed a Motion for Compassionate Release (ECF No. 79) based on his age and deteriorating mental and physical health.

**BACKGROUND**[1]

Mr. Cahill has had several adult criminal convictions starting in 1969. In 1978, Mr. Cahill was convicted on state charges of murder in Texas. After serving ten years, he was paroled, then imprisoned for violating his parole, then escaped imprisonment. In 1999, Mr. Cahill was convicted in the U.S. District Court for the District of Vermont having been

---

[1] The background is drawn from the Government's Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 85), which Mr. Cahill does not dispute, Def.'s Response (ECF No. 86) at 1, Mr. Cahill's Motion (ECF No. 79) and Reply (ECF No. 86) and their attached medical records, as well as the hearing on Mr. Cahill's Motion held on December 20, 2024.

found to be a felon in possession of five firearms. In 2010, following imprisonment for his Vermont conviction, Mr. Cahill was transferred to the Texas Department of Corrections to address his previous state parole violation. After his release in 2018, he was paroled to a halfway house in Texas, which he fled. He also violated his federal parole by failing to report to the U.S. Probation Office. In 2021, Texas authorities contacted Maine State Police for help locating Mr. Cahill. Maine State Police found him living in a house owned by Carl Weeks, Jr. Police contacted Mr. Cahill, who admitted he had fled to New England and had two firearms in his bedroom. The police obtained a warrant but could not find the guns where Mr. Cahill had specified. After interviewing Mr. Weeks, police learned he had moved the guns from the defendant's room to a closet. Law enforcement recovered both guns, a .22 caliber rifle and a 12-gauge shotgun, and Mr. Cahill was subsequently indicted on the charge for which he now seeks release.

At Mr. Cahill's sentencing I was aware he had had his knee replaced and was experiencing mobility issues as well as high blood pressure. *See* Revised Presentence Investigation Report (ECF No. 42) ¶¶ 51-52. Likewise, I considered his advanced age and physical condition in imposing a sentence. Sentencing Tr. (ECF No. 57) at 27. Mr. Cahill's criminal history and offensive conduct gave a sentencing guideline range of 30 to 37 months incarceration. I imposed an upward departure and sentenced Mr. Cahill to 72 months imprisonment. I found this departure was warranted, in part, because Mr. Cahill's criminal history showed a "manifestly unyielding tendency toward violence" and his case posed "a particular danger to the community." Sentencing Tr. at 27.

Mr. Cahill now moves for compassionate release on the basis that it is supported by his advanced age and a litany of medical conditions he is experiencing while incarcerated.[2] As of May 2024, he was "very incapacitated . . . using a cane and then having to hold onto walls," Def.'s Add'l Attach. (ECF No. 86-1) at 253, and he currently uses a wheelchair, Def.'s Mot. ¶ 13. Mr. Cahill's medical records also show he has an abnormal lung lesion, Def.'s Add'l Attach. at 248, and is exhibiting signs of having a collapsing and/or infected lung, *id.* at 188. His medical history includes hypertension, and "possible aortic stenosis." *Id.* at 253. More recently, Mr. Cahill, who is now 75, has been hospitalized multiple times for sepsis stemming from infections where he also exhibited urinary incontinence, altered mental status, and high fevers. *See generally*, *id.* at 13, 28-29; Def.'s Add'l Attach. at 29.

## DISCUSSION

### A. LEGAL STANDARD

A district judge can "vacate, alter, or revise a sentence previously imposed," only in "narrowly circumscribed" circumstances. *United States v. Mercado-Flores*, 872 F.3d 25, 28 (1st Cir. 2017). By statute, I may reduce Mr. Cahill's sentence if "extraordinary and compelling reasons" support the reduction when considered after the statutory sentencing factors of 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, the Defendant must exhaust his administrative remedies, *id.* § 3582(c)(1)(A), which Mr. Cahill has done here. Def.'s Mot. ¶¶ 6-8. In assessing whether Mr. Cahill qualifies for a reduced sentence

---

[2] In addition to his age and medical conditions, Mr. Cahill's pleadings note "he has served approximately 65% of his sentence." Def.'s Reply at 5. However, Mr. Cahill's time served falls short of the U.S.S.G. policy statement cutoff. *See* U.S.S.G. § 1B1.13(b)(2) ("Extraordinary and compelling reasons exist [where:] The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.").

3

I must consider: (1) if he has presented "extraordinary and compelling" circumstances, 18 U.S.C. § 3582(c)(1)(A); (2) if a reduction in sentencing would be "consistent with applicable policy statements issued by the Sentencing Commission," *id.*; and (3) under any applicable 18 U.S.C. § 3553(a) factors, if a reduction is warranted in whole or part given the circumstances. *United States v. Texeria-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022). However, "the section 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion." *United States v. Saccoccia*, 10 F.4th 1, 8 (1st Cir. 2021). Here, because I find the section 3553(a) factors do not support Mr. Cahill's release, his motion for compassionate release will be denied.

### B. 3553(a) FACTORS

In considering a motion for compassionate release the court must consider "the factors set forth in section 3553(a) to the extent that they are applicable."[3] 18 U.S.C. § 3582(c)(1)(A). In addressing these factors district courts "need not tick off each and every factor in a mechanical sequence." *Saccoccia*, 10 F.4th at 10.

---

[3] The 3553(a) factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the applicable guidelines]; (5) any pertinent policy statement (A) issued by the Sentencing Commission . . . (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Government argues that these factors do not support a reduction as Mr. Cahill's history of criminal convictions and violence coupled with his underlying offense make him a particular danger to the community. The Government further argues that Mr. Cahill's lengthy sentence was warranted by the seriousness of his crime and, because I was aware of Mr. Cahill's age and medical issues, a reduction in sentence would undermine respect for the law and fail to have a deterrent effect.

At his compassionate release hearing, counsel for Mr. Cahill argued that his age, current medical conditions, and limited mobility mean he is no longer a danger to the community. Carol Dean, a Maine retiree and companion to Cahill for the past five years, testified that she had no concerns about Mr. Cahill's history of violence and that Mr. Cahill had never been violent toward her. Ms. Dean also testified that if Mr. Cahill's motion were granted, he could live with her and be located about 30 minutes from a hospital. Defendant's counsel argues this lowers Mr. Cahill's risk of recidivism.

I agree with the Government. At sentencing I was aware of Mr. Cahill's advanced age and mobility issues, and despite his recent medical issues, which are undoubtedly troubling to him, my analysis of his history and characteristics as well as the nature and circumstances of his offense is largely unchanged. I found Mr. Cahill's case to be one that "poses a particular danger to the community." Sentencing Tr. at 27. This was largely based on Mr. Cahill's criminal history and its tendency toward violence. Mr. Cahill's first adult conviction was for assault where he forced a woman to have sex with him at knifepoint. Revised Presentence Investigation Report ¶ 24. Ten years later he was convicted for murder. *Id.* ¶ 33. Mr. Cahill claims this was an accidental discharge, which

5

is contradicted by what the victim's wife told police: that Mr. Cahill shot her husband and then held her and her daughter at gunpoint. *Id.* Mr. Cahill's arrest history also demonstrates a concerning proclivity for violence. He has been arrested for aggravated rape though the charge was dismissed, *id.*, ¶ 42 simple assault where his ex-girlfriend told police he had punched her in the head until she told him she would not leave, *id.* ¶ 44, and, in 2020 at the age of 71, elevated aggravated assault where a man reported Mr. Cahill had hit him in the head with a crowbar, *id.* ¶ 45. Against this history of violence continuing into Mr. Cahill's seventies, I do not find his argument that he is no longer dangerous particularly persuasive. While his diminished mobility lessens his ability to physically act on violence, his case is still serious and characterizable as presenting a danger to the community. Limited walking ability typically does not prevent possession, or use, of a firearm by a prohibited person.

Also relevant is that Mr. Cahill had already previously been convicted as being a prohibited person in possession of firearms and has continually demonstrated that incarceration appears to have not reduced his recidivist tendencies. While Mr. Cahill has shown he has a place to reside should he be released, he has not shown that he would remain there, and the historical record suggests the contrary. Even if wheelchair bound, Mr. Cahill's promise to follow parole conditions provides me little comfort against the backdrop of his history breaching the law, court orders, and prison walls. In short, the nature and length of Mr. Cahill's criminal history in light of the 3553(a) factors militate against reduction of his sentence.

## CONCLUSION

I sympathize with Mr. Cahill's health struggles. However, and for the foregoing reasons, Mr. Cahill's Motion for Compassionate Release is **DENIED** (ECF No. 79).

**SO ORDERED.**

Dated this 8th day of January, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge
